**Rolland E. LAWSON,**

v.

**The STATE of Texas.**

**No. 3–91–223–CR.**

Court of Appeals of Texas,
Austin.

May 5, 1993.

Rehearing Overruled June 30, 1993.

Walter C. Prentice, Austin, for appellant.

Ronald Earle, Dist. Atty., Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

CARROLL, Chief Justice.

A jury found appellant guilty of murder and assessed punishment of imprisonment for seventy-five years and a fine of $10,000. Tex.Penal Code Ann. § 19.02 (West 1989). We will affirm the conviction.

Appellant; the decedent, Leroy Pollock; and Leroy's brother Tom Pollock were partners in a motorcycle dealership known as Austin Honda. Appellant was the general manager of the dealership. At the time of Leroy's death, the dealership was in financial trouble and was in default[1] on its floor-plan financing with Honda Financial Corporation. The life of each of the partners was insured by a "key man" policy that named the dealership as the beneficiary.

On the evening of June 6, 1986, appellant and Leroy went boating on Lake Travis in a boat appellant sought to sell to Leroy. About 9 p.m. that night, other boaters noticed the boat adrift and on fire. Coming to lend aid, two fishermen rescued appellant from the water. Appellant explained that Leroy had accidently started a fire while changing gas tanks, the fire had caught Leroy's pants afire, and Leroy had jumped overboard. When the fire spread, appellant also jumped into the water. Appellant stated that he had spoken to Leroy while they were both in the water, then had lost contact with him, but that Leroy was a good swimmer. Appellant repeated this version of the events to Travis County Sheriff's Department investigators. Leroy was not rescued that night, and a search by divers on subsequent days proved futile. The boat was found burned to the waterline.

Approximately two weeks later, on June 23, 1986, Leroy's body was discovered floating on the lake. A steel anchor and a large rock were tied to the body with rope, and there was a small-caliber bullet wound through Leroy's head.

Sheriff's deputies questioned appellant who again related, in some detail, the story of the accidental fire. Appellant signed a sworn statement summarizing this version of the incident. Appellant was informed of his *Miranda* rights and told of the circumstances of the discovery of Leroy's body. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant then gave a videotaped statement in which he admitted that he killed Leroy, but claimed self-defense. Appellant stated that, after they had driven around in the boat for awhile, Leroy had initiated an argument and pulled a gun; that they had wrestled for the gun and it accidentally discharged killing Leroy; and that in a state of panic appellant weighted Leroy's body and sank it in the lake.

Subsequently, appellant was indicted for Leroy's murder and was previously tried and convicted of the charge. This Court reversed that conviction and remanded the cause for a new trial because of the trial court's failure to charge the jury on lesser-included offenses. *See Lawson v. State,* 775 S.W.2d 495 (Tex.App.—Austin 1989, pet. ref'd).

At the second trial, appellant defended the case exclusively on an assertion of self-defense. On a proper charge, the jury found appellant guilty of murder and found that he had used a deadly weapon in the commission of this offense. Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a)(2) (West Supp.1993); Tex.Penal Code Ann. § 19.02 (West 1989). The jury assessed punishment of imprisonment for seventy-five years and a $10,000 fine. Appellant brings six points of error on appeal, each alleging error in the trial court's admission or exclusion of evidence.

---

1. Honda's auditors had discovered that the dealership's inventory was overstated in its reports to Honda and that the dealership had not paid Honda for all the inventory that had been sold. This situation is commonly referred to as being "out-of-trust."

 Generally, the trial court's determinations whether to admit or exclude evidence are reviewed by the abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 378–80 (Tex.Crim.App.1990). To show reversible error in the admission or exclusion of evidence, in addition to an error in the trial court's ruling, the appellant must show that such admission or exclusion was harmful. Tex.R.App.P. 81(b)(2).

 In determining whether error is harmless under Rule 81(b)(2), we are not to focus on the propriety of the outcome of the case, but instead on the integrity of the process leading to the conviction. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim. App.1989); Tex.R.App.P. 81(b)(2). Factors that should be considered include: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris*, 790 S.W.2d at 587.

 Procedurally, we must first isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts of the cause, and second we must ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 587–88. We do not focus on the weight of the other evidence of appellant's guilt, but instead focus on whether the error might possibly have prejudiced the jurors' decision-making. In other words, our responsibility is to determine whether the trial was an essentially fair one. *Id.*

In his first point of error, appellant contends the trial court erred in excluding a portion of his videotaped statement. During his statement, appellant stated his belief that Leroy had been incarcerated in a Mexican prison for dealing illegal drugs. Over appellant's objection that the entire videotape should be shown under the rule of optional completeness, Tex.R.Crim.Evid.

106, 107, the jury was excused during the viewing of this portion of the videotape. When appellant attempted to introduce the excerpt during his presentation of evidence, the trial court again excluded this evidence.

The videotape, though admitted into evidence, has not been included in the record on appeal, and the statement of facts reflects only the excluded excerpt. Because of this omission, the State responds that appellant has failed to preserve error by failing to present a record sufficient to show error requiring reversal. *See* Tex. R.App.P. 50(d). We are presented, however, with a record that includes the excluded portion of the statement. Because the harm analysis focuses only on the complained-of evidence, we have a sufficient record to resolve this point of error.

The excluded evidence, in its entirety, is as follows:

MR. CUTLER: "Where had Leroy been?"

MR. LAWSON: "Leroy had—I didn't know it at the time, but Leroy had been in federal prison in Mexico."

MR. CUTLER: "Do you know what he was in for?"

MR. LAWSON: "He was in for—he was arrested for drug dealing, I understand. I'm not aware that he was actually doing drugs."

Appellant argues that these statements were relevant to his self-defense claim because they help explain appellant's state of mind regarding Leroy's alleged violent actions on the night of his death.

 Generally, self-serving statements are not admissible in evidence to prove the matter asserted. *Allridge v. State*, 762 S.W.2d 146, 152 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 1026, 109 S.Ct. 835, 102 L.Ed.2d 968 (1989). Exceptions to this rule apply where: (1) the excluded evidence is part of a statement or conversation previously introduced by the State and is necessary to explain the part of the statement previously admitted, or (2) the excluded evidence in fairness should be considered contemporaneously with the statement.

Tex.R.Crim.Evid. 106, 107; *Khoury v. State*, 669 S.W.2d 731, 733–34 (Tex.Crim. App.1984); *Reece v. State*, 772 S.W.2d 198, 203 (Tex.App.—Houston [14th Dist.] 1989, no pet.).

The rule of optional completeness applies only to compel admission of evidence on "the same subject" as the previously admitted portion. *Roman v. State*, 503 S.W.2d 252, 253–54 (Tex.Crim.App. 1974); *Hood v. State*, 828 S.W.2d 87, 90 (Tex.App.—Austin 1992, no pet.). In the instant cause, the excluded evidence does not appear to be on the subject of Leroy's death or appellant's claim of self-defense. During argument on appellant's objection, appellant's statement that immediately preceded the excluded portion was quoted as: "So at that time we took him in as a third partner." This context indicates that appellant's excluded statements related only to the chronology of Leroy joining the business and did not indicate appellant's belief of Leroy's propensity for violence.

Nor does appellant's belief that Leroy had been in a Mexican prison aid in the interpretation or completeness of his statement about what occurred on the boat. This belief is relevant only as it bears on whether appellant reasonably believed he was in danger from Leroy such that self-defense was justified. However, the asserted belief that Leroy had been convicted of drug smuggling, a nonviolent offense, is not probative evidence of a violent nature. The only purpose that this portion of the statement could have served would be to create prejudice against Leroy. We conclude that the trial court did not abuse its discretion in preventing the jury from viewing this portion of the videotaped statement. We overrule appellant's first point of error.

In his second and third points of error, appellant argues the trial court erred in allowing the lead prosecutor to testify as a witness in the trial and in refusing to declare a mistrial on this ground.

To bolster his self-defense claim, appellant presented testimony of an attorney, Robert Howell, who testified that appellant contacted him for legal advice shortly after Leroy's death. Howell testified that appellant told him he killed Leroy in self-defense after Leroy became angry and pulled a gun, that he panicked, weighted the body, and sank it in the lake. By this testimony, appellant apparently sought to refute an allegation that he fabricated his self-defense claim after Leroy's body was discovered.

The State then sought to discredit Howell's testimony with evidence of a meeting between Howell; Steve Brittain, an attorney representing Howell; and representatives of the district attorney's office, including the lead prosecutor. Brittain testified that the purpose of the meeting was to satisfy the district attorney that Howell had no information important to the murder investigation; however, Brittain could not recall any specific statements made at that meeting. The lead prosecutor then testified that, at that meeting, Howell stated that he had no conversations with appellant about Leroy's death until after Leroy's body was discovered.

While we do not approve of the practice of a prosecutor in a cause testifying as a fact witness in that same cause, either as witness in the case-in-chief or as a rebuttal witness, we conclude that appellant has not preserved any error as to the prosecutor's testimony in this cause. *Nichols v. State*, 511 S.W.2d 945, 947 (Tex.Crim. App.1974). Nor are we of the opinion that permitting the prosecutor's testimony constituted such a fundamental error that an objection was not required to preserve error. *See* Tex.R.Crim.Evid. 103(d).

Appellant failed to object to the prosecutor appearing as a witness until both sides had rested. During the course of the prosecutor's testimony, appellant objected only to specific testimony on the grounds that it was "self-serving," and "involved allegations of extraneous offenses," and objected to "leading" questions. Only at the conclusion of all the testimony, after both sides had rested, did appellant object to the prosecutor testifying in violation of the attorney-witness rule. *See* Tex.Disciplinary R. of Prof. Conduct 3.08 (State Bar

Rules art. X, § 9). In order to preserve error, a party must present a timely request, objection, or motion stating the specific grounds for the requested ruling, unless the grounds are apparent from the context, and must obtain a ruling thereon. Tex.R.App.P. 52(a); Tex.R.Crim.Evid. 103(a); *Nichols*, 511 S.W.2d at 947. The record does not reflect a timely objection. Accordingly, this complaint is waived. We overrule appellant's second and third points of error.

In his fourth point of error, appellant contends the trial court erred in allowing James Shank to give expert-opinion testimony on the effect of a nearby gunflash. Shank, a former deputy sheriff, had investigated the boat "accident" on the night of June 6, 1986. In addition to his other observations, Shank testified that he was familiar with the effects of a nearby gunflash and that, on the night in question, he had noticed no redness of appellant's eyes, or powder residue and powder burns on appellant's face that would be consistent with a discharge of a gun near appellant's face. Apparently, this testimony refuted a portion of the videotaped statement in which appellant describes being temporarily blinded by a gunflash during the alleged fight with Leroy.

 Appellant complains that Shank's testimony of the effect of a nearby gunflash was outside his area of expertise and, thus, improperly admitted. The trial court's admission of expert testimony is reviewed under the abuse-of-discretion standard. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981). Generally, expert testimony is proper if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Tex.R.Crim.Evid. 702. A witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Tex.R.Crim.Evid. 703. While Shank's complained-of testimony consisted primarily of his factual observations, an element of expertise was involved in his testimony. We conclude that the trial court did not abuse its discretion in allowing an experienced police officer with extensive experience with firearms and their operation to testify regarding close-proximity gunflashes and their effects. *See Murphy v. State*, 198 S.W.2d 98, 102 (Tex.Crim.App.1946). We overrule appellant's fourth point of error.

 In his fifth point of error, appellant contends the trial court erred in allowing testimony of an extraneous act of appellant. Appellant complains that this testimony was irrelevant and was offered only to prejudice the jury. *See* Tex.R.Crim. Evid. 402, 404(b).

Kate McLarnon, a rebuttal witness for the State, testified that she and her husband had furnished appellant a $150,000 line of credit in connection with appellant's sailboat business. Appellant extended the line of credit to its limit and then failed to repay the McLarnons. When confronted by the McLarnons, appellant told them that he would not repay the debt and explained the situation by an anecdote from his youth in which he had eaten a freshly-baked pie his mother had instructed him not to eat. According to Ms. McLarnon, appellant stated that he ate the pie piece-by-piece because it was so easy and that it had been just as easy to use the money from the line of credit, piece-by-piece.

The State argues that this testimony of extraneous acts by appellant was admissible to rebut his self-defense claim and to prove motive. Tex.R.Crim.Evid. 404(a)(1), (b). The State asserted that appellant was either embezzling from or mismanaging the dealership and killed Leroy for the insurance money to satisfy the obligation to Honda.

Ms. McLarnon's testimony did not show appellant had a violent nature, such as to refute the claim of self-defense. *Cf. Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim.App.1975). The State argues that the testimony bolsters Tom Pollock's testimony showing motive. The State contends that it was necessary to put on Ms. McLarnon's testimony after appellant attacked Tom's credibility. Although appellant's business dealings with the McLarnons and the pie anecdote are remote from the immediate facts, the testimony is probative to show a

pattern of credit abuse in appellant's business dealings. As such, it may have some relevance to show motive. We conclude the trial court did not abuse its discretion in allowing this testimony. Even in the event the trial erred in admitting this testimony, we conclude such error was harmless. *Harris*, 790 S.W.2d at 587–88. We overrule appellant's fifth point of error.

■ In his sixth point of error, appellant contends the trial court erred in admitting inadmissible hearsay evidence in the form of a letter written by the dealership's accountant to appellant and Tom Pollock concerning the dealership's business expenses. This letter analyzed the expenses of the business and found them significantly in excess of industry averages.

The State has argued that the letter is admissible as a statement of an agent or employee within the scope of his agency or employment. *See* Tex.R.Crim.Evid. 801(e)(2)(D). We agree. *See State v. City of Greenville*, 726 S.W.2d 162, 168 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). However, even if the letter is inadmissible, we conclude that its admission was harmless. The substance of the letter is cumulative of other evidence in the record, admitted without objection, concerning the business problems of the dealership. *Livingston v. State*, 739 S.W.2d 311, 333 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Offor v. State*, 749 S.W.2d 946, 951 (Tex.App.—Austin 1988, pet. ref'd, untimely filed). Tom Pollock testified concerning the dealership problems under appellant's management and the out-of-trust situation on the floorplan financing. We conclude that the trial court did not err in admitting the letter into evidence.

Additionally, the implications of the letter can be construed to support either appellant's or the State's theory of the case. The business problems could have provided the motive for an intentional murder of Leroy or could have been the catalyst for a confrontation that led to Leroy's death in self defense. We conclude that any error in admitting this letter is harmless. *Har-*

*ris*, 790 S.W.2d at 587–88. We overrule appellant's sixth point of error.

We affirm the judgment of conviction.